**SO ORDERED.**

**SIGNED this 22nd day of July, 2013.**



*Dale L. Somers*
Dale L. Somers
United States Bankruptcy Judge

---

**Opinion Designated for Electronic Use, But Not for Print Publication**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| In Re: | |
| JERRED ALAN MANN, | CASE NO. 12-20196-7 |
| KRISTEN LYN MANN, | CHAPTER 7 |
| DEBTORS. | |
| ERIC C. RAJALA, | |
| PLAINTIFF, | |
| v. | ADV. NO. 12-6103 |
| GERALD C. MANN, | |
| JOYCE MANN, | |
| DEFENDANTS. | |

**OPINION DENYING PLAINTIFF-TRUSTEE'S MOTION FOR**
**SUMMARY JUDGMENT ON PREFERENCE CLAIMS**

This proceeding is before the Court on the Plaintiff-Trustee's motion for summary judgment. The Trustee appears as his own attorney. The Defendants appear by counsel Daniel L. Allen. The Court has reviewed the relevant materials and is now ready to rule.

**Facts**

**1. The Trustee's claims.**

Before filing bankruptcy, the Debtor-husband had given his parents two promissory notes, one in January 2007 for $128,318 and another in March 2008 for $91,000. According to the Plaintiff-Trustee, during 2011, the Debtor-husband made the following payments to his parents on these debts:

| Date | Payment | Dollar amount |
|------|---------|---------------|
| 2/9/11 | check #1037 | 1,100 |
| 2/25/11 | check #1038 | 2,000 |
| 3/2/11 | check #1048 | 1,100 |
| 3/25/11 | check #1049 | 1,000 |
| 4/6/11 | check #1057 | 1,100 |
| 4/25/11 | check #1058 | 1,000 |
| 4/27/11 | check #1068 | 1,100 |
| 6/6/11 | check #1077 | 1,100 |
| 5/25/11 | check #1078 | 1,500 |
| 6/27/11 | check #1086 | 1,100 |
| 6/25/11 | check #1087 | 2,000 |
| "Proceeds from Malibu sale" | | 3,500 |
| 7/21/11 | check #1094 | 1,100 |
| 7/25/11 | check #1095 | 2,000 |
| 8/31/11 | check #1110 | 1,100 |
| 8/25/11 | check #1111 | 1,000 |
| 9/29/11 | check #1125 | 1,100 |
| 9/25/11 | check #1126 | 1,000 |
| 10/26/11 | check #1138 | 1,100 |
| 10/25/11 | check #1139 | 1,000 |
| 12/6/11 | check #1156 | 1,100 |

2

The total amount of the checks is $24,600, and adding the "proceeds from Malibu sale" brings the total to $28,100.

The Debtors filed a voluntary Chapter 7 petition in January 2012, and Eric Rajala was appointed as the Trustee for their case. In July 2012, the Trustee sued the Debtor-husband's parents, seeking to recover the listed payments as preferences. The Defendants filed an answer denying that the Trustee could recover from them. They said that they lacked sufficient knowledge to admit or deny the Debtors had made the specified payments to them, and added that they had forwarded any money the Debtors had given them to a creditor that "provided goods and services for Debtors in Defendants' name[s]."

The parties agreed to a scheduling order that set December 31, 2012, as the deadline for completing discovery. Late in December, the Trustee filed notices saying he had served a set of interrogatories, a request for production of documents, and some requests for admission on the Defendants. No other deadline was set, so the Defendants had 30 days (or until late in January 2013) to respond to these discovery requests, as is normally required by the applicable rules.[1] A day after filing the discovery notices, the Trustee filed a motion to extend the discovery deadline, saying his workload had been unexpectedly heavy in November and December, and the Defendants had not delivered to him the disclosures required by Federal Rule of Civil Procedure 26(f) (made applicable by Bankruptcy Rule 7026). The Defendants did not respond to the motion, and the

---

[1]*See* Fed. R. Civ. P. 33, 34, and 36, made applicable by Fed. R. Bankr. P. 7033, 7034, and 7036.

3

discovery deadline was extended to February 11, 2013. The deadlines for submitting a pretrial order, filing dispositive motions, and being ready for trial were also extended.

On February 25, 2013, the Trustee filed a motion to compel discovery, saying the Defendants still had not responded to his discovery materials. He sent a notice setting an objection deadline of March 21. Also on February 25, he filed a motion for summary judgment, asking the Court to deem his requests for admission to be admitted, and grant judgment based on those deemed admissions.

On the day after the deadline for objecting to the Trustee's motion to compel, the Defendants filed a document called "Answer to Motion for Summary Judgment," which addresses the Trustee's motion to compel discovery rather than his summary judgment motion. They said (1) their attorney had appeared in Court on February 7 and been informed that the case deadlines had been extended, (2) the attorney updated his calendar but inadvertently extended the deadline to respond to the Trustee's discovery materials, (3) the Defendants were scheduled to meet with their attorney on March 21 to notarize their discovery responses but icy roads prevented the meeting, and (4) they were scheduled to meet their attorney on March 22 to notarize the responses. They did not explain why they had not responded to the discovery requests within 30 days after the requests were served on them, or why they had not responded to the Trustee's summary judgment motion by the March 18 deadline set by District of Kansas Local Bankruptcy Rule 7056.1(f). A review of the Court's docket reveals that the February 7 hearing was

4

not held because the order extending the deadlines for discovery, a pretrial order, dispositive motions, and trial had been entered two weeks before that date.

On March 25, the Defendants filed their responses to the Trustee's requests for admission and their responses to his interrogatories. In response to the request that they admit the Debtor-husband made the listed payments to them, they admitted he gave them checks 1037, 1057, 1058, 1086, 1094, 1110, 1125, and 1138. They denied he gave them the other checks or the Malibu sale proceeds on the ground they lacked sufficient information to admit or deny receiving the payments. They did not indicate what, if any, investigation they undertook in an effort to respond to the request for admission. In their response to the interrogatories, they said the creditor they had forwarded their son's payments to was the Bank of Odessa. They said they owed the Bank $91,000 on a debt they incurred to get money for the Debtors to pay the Debtors' bills. In response to a request that they list the dates and amounts of any payments they had made to the Bank and the source of the money used to make each payment, they said, "Please refer to Installment Payment Receipt Book." They did not include a copy of that receipt book with the response they filed.

On April 4, the Trustee filed a reply to the Defendants' "Answer to Motion for Summary Judgment," which he treated as if it actually responded to his summary judgment motion, rather than to his motion to compel discovery. He said the Defendants' March 22 response was late under Local Rule 7056.1(f). The Trustee pointed out that the Defendants' explanation for the tardiness of their answer addressed why they were late

5

responding to his discovery, but not why they were late responding to his summary judgment motion, and asked the Court to disregard the response for that reason. He also noted that their answer did not begin with a section stating material facts as to which there was a genuine issue, and asked the Court to deem his statement of facts to be admitted due to that omission. The Trustee complained that the Defendants' alleged lack of knowledge or information was not adequate to deny his requests for admission, because according to Civil Rule 36(a)(4) (made applicable by Bankruptcy Rule 7036), a party may deny a request for admission based on a lack of knowledge or information "only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."

On April 15, the Defendants filed a motion to enlarge the time for them to respond to the Trustee's motion for summary judgment, an amended memorandum in opposition to the Trustee's motion for summary judgment, and a motion for leave to file amended responses to the Trustee's requests for admission (in effect, they responded to the motion to compel discovery by submitting their responses to the discovery requests). Their attorney said two snowstorms that dropped a total of over 20 inches of snow prevented him from being in his office "during normal business hours" from February 21 (a Thursday) to March 1 (a Friday), and he did not know until sometime after March 4 (the following Monday), when he was able to return to his office, that the Trustee had filed the summary judgment motion. He also said: "That while the immediate effects of missed appointments is easy to quantify, the cumulative effect of rescheduling court appearances,

6

client meetings and other normal activities of a law office after two (2) major snow storms, is not." The Court takes this to mean the attorney was saying the snowstorms put him behind on lots of work, and getting caught up on all that work kept him from becoming aware of the Trustee's motion any sooner than he did. He contended the weather constituted an adequate reason to find that the delay in filing the Defendants' response to the summary judgment motion resulted from excusable neglect. The Court notes the attorney still did not explain why the responses to the Trustee's interrogatories, requests for production of documents, and requests for admission weren't submitted within 30 days of the date the Trustee served the discovery, but his explanation also suggests their response to the motion to compel discovery had been delayed by the snowstorms. His weather explanation covered some of the time period from the Trustee's February 25 filing of his motion to compel discovery and his motion for summary judgment, and the deadlines for the Defendants to respond to those motions.

**2. The Trustee's request for deemed admissions.**

Although the Defendants should have responded sooner to the Trustee's discovery, his motion to compel discovery, and his motion for summary judgment, the Court is not willing to bar their defense to the Trustee's claims based on tardiness. Their delay in responding to the discovery was about two months, not excessively long. The Court routinely allows that much additional time to comply with discovery (although in the future, counsel is admonished to ask in advance for more time). Their delay in responding to the motion to compel was a single day and a few days more for the

7

summary judgment motion. The Court will therefore consider the substance of the materials the Defendants filed in response to the Trustee's discovery requests and motions.

In their amended response to the Trustee's summary judgment motion, the Defendants claim their responses to the Trustee's requests for admission were sufficient because his requests were essentially identical to the allegations in his complaint, which they had already disputed in their answer to the complaint. This response fails because a different standard applies to an answer than to a response to a request for admissions. Civil Rule 8(b)(5), made applicable by Bankruptcy Rule 7008(a), allows a party answering a complaint to simply state that he or she lacks knowledge or information sufficient to form a belief about the truth of an allegation, but Civil Rule 36(a)(4) says a party may assert a lack of knowledge or information as a reason for failing to admit or deny a request for admission "only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." The Defendants did not say anything in their responses to the requests for admission about having made any inquiry.

Nevertheless, the motions and amended memorandum opposing summary judgment that the Defendants filed on April 15 make clear that they want to withdraw the deemed admissions that resulted under Civil Rule 36(a)(3) from their failure to timely respond to the Trustee's requests for admission. The Tenth Circuit has ruled that trial courts have discretion to permit a party to withdraw such admissions, and that it was an

abuse of discretion to deny permission to withdraw them when summary judgment was granted based on them and the party who obtained the admissions failed to show withdrawal would prejudice its ability to maintain or defend the action on the merits.[2] The fact the party based a motion for summary judgment on the deemed admissions is not sufficient prejudice to deny the withdrawal of the admissions.[3]

On two key points — whether the Debtor-husband made the listed payments to them and whether he was insolvent when he made the payments — the Defendants have denied the Trustee's assertions on the ground they lack sufficient information to admit or deny them. As noted, Civil Rule 36(a)(4) limits a party's right to make such a response to a request for admission. The party is supposed to state that he or she has made reasonable inquiry and that the information he or she knows or can readily obtain is insufficient to enable him or her to admit or deny the request. This standard guides the Court's analysis of the propriety of allowing the Defendants to withdraw the deemed admissions about the Debtor-husband's payments and his insolvency. The Court will give them the benefit of the doubt and assume they made some inquiry before claiming they had insufficient information to admit or deny the requests for admission.

The Court does not understand how the Defendants can plausibly claim they don't know and can't easily find out whether their son, the Debtor-husband, gave them over half the payments the Trustee alleges he did. Their own bank records should provide

---

[2]See Raiser v. Utah County, 409 F.3d 1243, 1245-47 (10th Cir. 2005).

[3]Id. at 1246.

them with that information.  If they deposited the checks into their own account or accounts, and then wrote checks to the Bank of Odessa, their own checking account records should tell them if they got the money the Trustee says they did.  If they simply signed the Debtor-husband's checks over to the Bank of Odessa, that Bank's records should show the payments, and the Bank would not hesitate to give copies of the records about the payments to the customers who were liable on the loan the payments were applied to.  The Debtors signed under penalty of perjury and filed a Statement of Financial Affairs in which they reported that they paid the Defendants $32,200 in 2011; this supports the Trustee's assertion the Debtor-husband paid them $28,100 between January 31, 2011, and January 30, 2012.  The Court concludes the Defendants must be deemed to have admitted they received the payments from their son that the Trustee claims they did.

On the other hand, the Court thinks the Defendants could reasonably claim they lacked the knowledge or information needed to be able to admit or deny that the Debtor-husband was insolvent when he made those payments to them.  There is no reason to assume they would necessarily have any better access to information about the Debtors' financial condition than the Trustee does, and the Trustee has not suggested they do.  The Defendants could probably ask their son and his wife about it and hope for honest answers, but the Trustee can just as easily require the Debtors to answer his questions about their solvency under oath.  Unlike records of payments the Defendants received and

10

forwarded to the Bank of Odessa, there is no reason to expect them to have records documenting the Debtors' financial condition.

### 3. The Trustee's evidence of insolvency.

Besides asking the Court to deem the Defendants to have admitted the Debtor-husband was insolvent when he made the specified payments to them during 2011, the Trustee contends the Debtors' Statement of Financial Affairs and Schedules prove that they were insolvent when each payment was made. A careful review of the SOFA and Schedules reveals, however, that they don't provide enough information to show that the Debtor-husband was insolvent as of any specific date before the Debtors filed bankruptcy.

The Trustee points to parts of the SOFA and Schedules that reveal some things about the Debtors' financial condition before their bankruptcy filing, but ignores aspects that keep the documents from providing a complete picture of their prepetition financial condition. The Debtors failed to include certain information that is required to be included in the Schedules, and therefore, the Schedules and the SOFA do not, without amendment, contain enough information to allow a determination that the Debtors were insolvent when the allegedly preferential payments were made. The Debtors' bankruptcy documents were filed on January 30, 2012. The Debtors reported all their debts were joint and all their assets were either jointly-owned or owned by the Debtor-husband alone, so his personal financial condition should not have differed from their joint condition. They reported having total debts of $1,091,638 and total assets worth $931,492. Relying on § 101(32)(A) of the Bankruptcy Code, which defines "insolvent," for any entity other

11

than a partnership or a municipality, to mean "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of — . . . (ii) property that may be exempted from property of the estate under section 522 of this title," the Trustee argues the Court should subtract the value the Debtors reported for their exempt property ($123,192) from their assets, making their assets for purposes of § 101(32)(A) only $803,300.[4]

The Trustee says the Debtors' Statement of Financial Affairs shows they "transferred no assets during the year before they filed bankruptcy," relying on item 10. But item 10 on the SOFA actually asks debtors to report property that was transferred before the bankruptcy filing "other than property transferred in the ordinary course of the business or financial affairs of the debtor." This leaves some room for the Debtors to have made unreported transfers that they (or their attorney) considered to have been made in the ordinary course. The Trustee has presented no evidence to plug this potential hole in his insolvency proof.

The Trustee says the Debtors' Schedules show they incurred only three new debts in 2011, a second mortgage on their home and purchase-money loans for two cars.

---

[4]The Trustee does not suggest subtracting debts secured by the Debtors' exempt property, like their home mortgage, from their total debts for purposes of determining whether they are insolvent. The Debtors claimed Missouri exemptions, though, so their homestead exemption is limited to $15,000. This means the homestead exemption wouldn't make much difference even if the court deducted that amount from their debts. They also reported the home is worth $21,500 more than the two mortgages on it, so it may not be appropriate to deduct their exemption claim from the home mortgage debts anyway. Most of the rest of their exempt property is not covered by any secured claim; besides their home, the only other exempt property covered by a security interest is $2,000 worth of household goods they bought from Nebraska Furniture Mart.

However, they reported a number of other debts they owed without indicating when the debts were incurred. For example, they reported owing deed-of-trust debts of $227,000 and $16,149 secured by the real property in Kansas City, Missouri, that they said used to be their address, and deed-of-trust debts of $151,632 and $14,914 secured by real property in Springfield, Missouri, but did not report when they incurred any of these debts. They reported a priority debt of $16,000 to the IRS for projected 2011 income taxes, a debt that would not be due until April 2012. Finally, they reported $90,247 in unsecured debts without stating the dates they incurred any of them. Subtracting all these debts, a total of $515,942, from the $1,091,638 total the Debtors reported on their Schedules would reduce their debts to $575,696, well below the $803,300 worth of assets the Trustee contends the Court should count under § 101(32)(A). While it seems unlikely the Debtors incurred these debts after they made all the payments to the Defendants that the Trustee is trying to recover, the Debtors' SOFA and Schedules do not preclude the possibility this is true, so those documents cannot establish for summary judgment purposes that the Debtor-husband was insolvent when he made all the payments to his parents. The Defendants did not complete or file the Debtors' SOFA and Schedules, and cannot be penalized for the Debtors' failure to provide all the information the forms asked them to disclose.

Furthermore, the Debtors reported having almost $227,000 in employment income in 2011, and, as of their January 30, 2012, filing date, having $4,500 in employment

income and $3,100 in rental income for 2012.[5]  In addition to the $32,200 they reported

having paid the Defendants in 2011, they reported having paid $26,200 on loans,

installment contracts, and other debts within 90 days before filing bankruptcy.

Subtracting those amounts (a total of $58,400) from their reported 2011 employment

income leaves $168,600 of that income unaccounted for.  Since they presumably received

that income throughout 2011, during the same time when the Debtor-husband was making

the questioned payments to his parents, whatever portion of it they possessed at the time

of each payment was an asset that would have affected the difference between their debts

and their assets as of that payment.  Further, the amount of interest due to creditors might

impact the amount of debt that was outstanding when each payment was made to the

parents, further reducing any prepetition insolvency that the Debtors' bankruptcy papers

otherwise suggest existed.

The Court notes that the Defendants appear to be suggesting the Debtors were

generally paying their debts as they became due, a circumstance that is sometimes

equated with solvency.  But under the Bankruptcy Code, although that test applies when

the Court has to decide under § 303(h)(1) whether to grant relief against the alleged

debtor on an involuntary petition, it does not apply when the Court has to decide under

§ 547(b) whether the debtor was insolvent when he or she made a transfer that might be a

---

[5]The Court notes that the Debtors didn't report having any rental income for 2011, but only for
January 2012.  Yet, they reported owning two pieces of real property besides their current home, one of
which they said was their own address from May 2008 to July 2010, and they reported having unexpired
leases on both those properties.  This suggests they might have had rental income for 2011 that they failed
to report.

preference. Instead, § 547(b)(3) limits preferences to transfers made while the debtor was "insolvent" and § 101(32)(A) defines "insolvent" for certain entities, including individuals like the Debtors, to mean "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation." As the Tenth Circuit said in *Mama D'Angelo*, this is the "balance sheet" test for insolvency.[6]

**Discussion**

**1. Summary Judgment Standards**

      Under the applicable rules of procedure, the Court is to grant summary judgment if the moving party demonstrates that there is "no genuine issue of material fact" and that the party "is entitled to a judgment as a matter of law."[7] The substantive law identifies which facts are material.[8] A dispute over a material fact is genuine when the evidence is such that a reasonable factfinder could resolve the dispute in favor of the party opposing the motion.[9] In adjudicating disputes, bankruptcy courts usually both determine the law and find the facts. In deciding a summary judgment motion, though, the Court is limited to its role of deciding legal questions, not weighing the evidence and resolving factual disputes, but merely determining whether the evidence favorable to the non-moving party

---

    [6]*See Gillman v. Scientific Research Prods., Inc. of Delaware (In re Mama D'Angelo)*, 55 F.3d 552, 554 (10th Cir. 1995) (for purposes of preferences, § 547(b)(3) and § 101(32)(A) use what courts often call the "balance sheet" test for insolvency, that is, whether the sum of the debtor's debts exceeds the debtor's assets at a fair valuation).

    [7]Fed. R. Civil P. 56(c), made applicable by Fed. R. Bankr. P. 7056.

    [8]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

    [9]*Id.*

15

about a material fact is sufficient to require a trial[10] at which the Court would act in its factfinding role. Summary judgment is inappropriate if an inference can be drawn from the materials properly submitted either to support or oppose the motion that would allow the non-moving party to prevail at trial.[11] The substantive law's allocation of the burden of proof also affects the Court's analysis of a summary judgment motion. The party asking for summary judgment has the burden of showing that no genuine issue of material fact exists.[12]

## 2. The Trustee's Preference Claims

The Trustee is suing the Defendants to recover alleged preferences the Debtor-husband paid to them.[13] To show the payments are preferences, § 547(b) requires the Trustee to prove the Debtor-husband transferred:

> an interest of the debtor in property —
>     (1)    to or for the benefit of a creditor;
>     (2)    for or on account of an antecedent debt owed by the debtor before such transfer was made;
>     (3)    made while the debtor was insolvent;
>     (4)    made —
>         (A)    on or within 90 days before the date of the filing of the petition; or
>         (B)    between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

---

[10]*Id*. at 249-50.

[11]*See id*. at 248.

[12]*Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir. 1993).

[13]The Trustee's complaint alleges both Debtors made the payments but his summary judgment materials say only the Debtor-husband made them.

16

(5)    that enables such creditor to receive more than such creditor would receive if —

        (A)    the case were a case under chapter 7 of this title;

        (B)    the transfer had not been made; and

        (C)    such creditor received payment of such debt to the extent provided by the provisions of this title.

The Defendants are the Debtor-husband's parents, so they are "insiders" under § 101(31)(A)(i), and both the 90-day preference period fixed by § 547(b)(4)(A) and the one-year preference period fixed by § 547(b)(4)(B) apply to transfers made to them. They have admitted the Debtor-husband owed them debts based on two promissory notes, and have admitted any payments he made to them were credited to one or both of those notes. They suggest the payments were not made for their benefit but only to enable them to make payments on related debts they had incurred for the Debtors' benefit, but they concede the payments reduced their liability on those debts. As stated in the Facts section of this Opinion, the Court deems the Defendants to have admitted the Debtor-husband made the specified payments to them on the dates alleged by the Trustee. Furthermore, other than suggesting they received no benefit from the payments because they simply forwarded them on to the Bank of Odessa, the Defendants have asserted no plausible argument that the payments did not allow them to receive more than they would get in a Chapter 7 liquidation if the payments had not been made to them.

      The Defendants' assertion that they forwarded any payments their son made to them on to the Bank of Odessa as payments on a loan they had acquired for the Debtors' benefit suggests they might have been mere conduits for the Debtor-husband's payments

17

to the Bank, an assertion that can amount to a recognized defense to liability under § 550(a)(1) for an avoided transfer.[14]  Section 550(a)(1) authorizes the Trustee to recover an avoidable transfer (such as a preference covered by § 547(b)) from "the initial transferee of such transfer or the entity for whose benefit such transfer was made."  The conduit defense can protect a party, such as a bank, that would otherwise be the "initial transferee" of the transfer.  In *Malloy v. Citizens Bank*, the Tenth Circuit ruled "'the minimum requirement of status as a "transferee" is dominion over the money or other asset, the right to put the money to one's own purposes.'"[15]  But the defense will not work in this case because either (1) the Defendants had the right to use the Debtor-husband's payments to them for their own purposes and chose to use them to pay their debt to the Bank of Odessa, and were therefore "initial transferees" of the payments, or else (2) they had some kind of obligation to forward the payments to the Bank which prevented them from having the right to use the money for their own purposes and being "initial transferees," but they were nevertheless "entit[ies] for whose benefit" the Debtor-husband made the payments because the payments were applied to reduce their own debt to the Bank.

Thus, the Trustee's summary judgment motion comes down to the question whether he has established that the Debtor-husband was insolvent when he made each of

---

[14]*See, e.g., Malloy v. Citizens Bank (In re First Security Mortgage Co.)*, 33 F.3d 42, 43-44 (10th Cir. 1994); *Rupp v. Markgraf*, 95 F.3d 936, 938-44 (10th Cir. 1996).

[15]33 F.3d at 43-44 (*quoting and adopting Bonded Financial Servs., Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir. 1988)).

the payments to or for the benefit of the Defendants. The Court is not convinced the Trustee has established such insolvency for summary judgment purposes. The payment dates the Trustee alleges ranged from February 9, 2011, to December 6, 2011. Only the final payment of $1,100 fell within the 90-day prepetition window during which § 547(f) provides a presumption that the Debtor-husband was insolvent. The Trustee argues, however, that the Statement of Financial Affairs and the Schedules the Debtors filed on January 30, 2012, establish that the Debtor-husband was insolvent all the way back to the very first payment, made nearly a year before the Debtors filed those documents.

The Trustee cites two cases about determining a debtor's solvency or insolvency on a specific date by using "retrojection" and "projection," *Gillman v. Scientific Research Products Inc. of Delaware (In re Mama D'Angelo, Inc.)*,[16] and *In re CSI Enterprises, Inc*.[17] He quotes a description of this practice from *Mama D'Angelo*: "Courts often utilize the well-established bankruptcy principles of 'retrojection' and 'projection,' which provide for the use of evidence of insolvency on a date before and after the preference date as competent evidence of the debtor's insolvency on the preference date." But the Trustee has presented no evidence about the Debtors' alleged insolvency on any date before they filed bankruptcy. Instead, he is relying completely on evidence of the Debtors' insolvency as of the date they filed bankruptcy and asking the Court to "retroject" that insolvency back anywhere from eight weeks to nearly a year before that

---

[16]55 F.3d 552 (10th Cir. 1995).

[17]220 B.R. 687 (Bankr. D. Colo. 1998).

19

date. *Mama D'Angelo* involved retrojecting only six days (and projecting 52 days),[18] a far shorter time than the Trustee wants to do here. In addition, the parties in *Mama D'Angelo* did not object to the bankruptcy court's doing the retrojection and projection (which it did after trial, not on a summary judgment motion), but only questioned whether the evidence supported the court's conclusion that the debtor was insolvent on the date of the transfers that were alleged to be preferences.

Although the *CSI Enterprises* opinion mentioned that courts have used retrojection and projection in determining a debtor's insolvency as of the date an alleged preferential transfer was made, the court did not actually apply retrojection in that case.[19] Instead, the court devoted nearly all of its opinion to explaining various shortcomings in an expert report that was the only evidence the plaintiff presented at trial in an effort to establish the debtor's insolvency on the relevant date.[20] The opinion provides no support for the Trustee's assertion this Court should retroject the Debtors' insolvency on the date they filed bankruptcy to cover nearly an entire year before that date. In fact, the opinion suggests a court must hear evidence of insolvency both before and after the alleged preference date, or evidence of insolvency on a pre-preference date plus evidence there

---

[18]55 F.3d at 554-555.

[19]*See* 220 B.R. at 690-98.

[20]*Id*. at 692-98.

20

was no improvement after that date, in order for the court to infer the debtor was insolvent on the date of the alleged preference.[21]

In *Mama D'Angelo*, the 10th Circuit cited two cases to support its statement about using retrojection to determine insolvency. The first was *Foley v. Briden (In re Arrowhead Gardens, Inc.).*[22] In that case, following a trial, the bankruptcy court compared a company's balance sheet for April 30, 1979 (prepared in 1981 for the preference litigation), to one that had been prepared in December 1978 for August 31, 1978, and concluded the April 1979 one overstated the debtor's assets and understated its liabilities; as adjusted by the court, the balance sheet showed the debtor was insolvent at the end of April 1979.[23] Then the court noted the owner and person in control of the debtor — who was also the preference defendant and the one who prepared the balance sheet for April 30, 1979 — had testified that the debtor's financial condition did not significantly change from the beginning to the end of April 1979. The court then applied retrojection to conclude the debtor had also been insolvent during March and April of 1979, which meant all the payments that were alleged to have been preferences, made during those two months, had been made while the debtor was insolvent.[24] So the court heard evidence about the debtor's financial condition in 1978, retrojected the insolvency

---

[21]*Id*. at 690-91.

[22]32 B.R. 296 (Bankr. D. Mass. 1983), *aff'd* 776 F.2d 379 (1st Cir. 1985).

[23]32 B.R. at 299-300.

[24]Id. at 300-01.

Case 12-06103   Doc# 53   Filed 07/22/13   Page 21 of 24

it found was shown by the modified April 30, 1979, balance sheet, for only 60 days, and

heard evidence that the debtor's financial condition had not changed during those 60

days.  On appeal, the 1st Circuit ruled (1) the finding of insolvency as of April 30, 1979,

was not clearly erroneous, (2) it had previously approved the use of retrojection, and (3) it

saw no reason not to use retrojection in this case.[25]

The second case the *Mama D'Angelo* court cited was an older 10th Circuit case,

*Interstate National Bank of Kansas City v. Luther (In re Garden Grain & Seed Co.,*

*Inc.).*[26]  In that case, an audit of the debtor-company's books from its inception in 1949 to

its bankruptcy filing in 1952 was introduced into evidence, and it showed the book value

of the debtor's assets was less than its liabilities as of four months before its bankruptcy;

the auditor also testified that the audit showed the debtor lost money from its inception

and that its financial condition continuously deteriorated during the four months before its

bankruptcy.[27]  Other evidence showed the debtor, a warehouseman and grain dealer, was

"short in its grain account on a rising market"[28] (meaning that the debtor had less grain

than its books showed it should have and that this shortage existed when the market price

was going up).  The Circuit affirmed the bankruptcy referee's finding, affirmed by the

district court, that the debtor was insolvent on the dates when payments had been made to

---

[25]776 F.2d at 382-83.

[26]221 F.2d 382 (10th Cir. 1955).

[27]221 F.2d at 391.

[28]*Id.*

22

a creditor during the four months before the debtor's bankruptcy because the finding was not clearly erroneous.[29]

At most, *Mama D'Angelo* and the cases it cited suggest the Debtors' Statement of Financial Affairs and Schedules, if they were the only evidence presented at trial and contained nothing contrary to the Trustee's insolvency claim, might be sufficient to support findings that the Debtor-husband was insolvent when he made all the payments to the Defendants. The cases do not, however, support the Trustee's assertion that those documents are sufficient to satisfy the summary judgment standard that no reasonable factfinder could conclude the Trustee had not established insolvency on the relevant dates; the decisions all came after a trial was held. Furthermore, as stated in the Facts section of this Opinion, a careful review of the SOFA and Schedules reveals that they don't provide enough information to show that the Debtor-husband was insolvent as of any specific date eight weeks or more before the Debtors filed bankruptcy. If nothing else, the documents are deficient as they do not state when the Debtors incurred many of the debts they reported owing, and the sum of those with reported dates is less than the value of the assets the Debtors reported.

**Conclusion**

For these reasons, the Court concludes the Trustee's motion for summary judgment must be denied. The Defendants are deemed to have admitted the Debtor-

---

[29]*Id*. at 393.

husband made the payments to them that the Trustee alleges he did, but are not deemed to have admitted their son was insolvent on each date when he made a payment to them. The Debtors' Statement of Financial Affairs and Schedules are not sufficient to establish that the Debtor-husband was insolvent on the relevant dates.

# # #

Case 12-06103    Doc# 53    Filed 07/22/13    Page 24 of 24